**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MORGAN CHRISTOPHER BEALL,

                            Plaintiff,

              v.                                       No. 5:16-CV-92

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                            Defendant.

---

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                         **OF COUNSEL:**

Olinsky Law Group               HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202


Social Security Administration,      JASON P. PECK, ESQ.
Office of General Counsel          Special Assistant U.S. Attorney
Attorneys for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

## MEMORANDUM-DECISION AND ORDER

Plaintiff Morgan Christopher Beall ("Plaintiff") brings this action pursuant to 42 U.S.C.

§ 405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying his application for benefits under the Social Security Act ("Act").

Plaintiff moves for a finding of disability, or in the alternative, for the matter to be remanded

for further proceedings, and the Commissioner cross-moves for a judgment on the

pleadings.  Dkt. Nos. 1, 8.

## I.  Background

On September 26, 2012, plaintiff protectively filed an application for disability

insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq., claiming an

alleged onset date of May 15, 2012.  T.[1] 168-70.  The application was denied on December

20, 2012.  Id. at 87-90.  Plaintiff requested a hearing before an administrative law judge

("ALJ"), which was first held before ALJ Marie Greener on February 27, 2014.  Id. at 48-70.

A second hearing was held on June 19, 2014, at which time ALJ Greener sought the

testimony of a vocational expert.  See T. 29-47.  In a decision dated August 6, 2014, the

ALJ held that plaintiff was not entitled to disability benefits.  Id. at 10-28.  Plaintiff filed a

timely request for review with the Appeals Council, and on December 2, 2015, the request

was denied, thus making the ALJ's findings the final decision of the Commissioner.  Id. at 1-

5.  This action followed.

## II.  Discussion
## A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether

the correct legal standards were applied and whether substantial evidence supports the

decision.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is

"'more than a mere scintilla,'" meaning that in the record one can find "'such relevant

---

[1] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Dkt. No. 9.

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402

U.S. 389, 401 (1971) (internal quotation marks omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with

sufficient specificity to allow a court to determine whether substantial evidence supports the

decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing

Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute

its interpretation of the administrative record for that of the Commissioner if the record

contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d

Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is

conclusive. 42 U.S.C. § 405(g); see Halloran, 362 F.3d at 31.


## B. Determination of Disability

"Every individual who is under a disability. . . shall be entitled to a disability. . . benefit

. . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not

less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an

affliction that is so severe that it renders an individual unable to continue with his or her

previous work or any other employment that may be available to him or her based upon

age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be

supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. §

423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical

facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain

or disability, and educational background, age, and work experience." Ventura v. Barnhart,

No. 04 Civ. 9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v.

Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)) (additional citation omitted).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to

determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he [or she] is
> not, the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits his [or her] physical
> or mental ability to do basic work activities.  If the claimant suffers
> such an impairment, the third inquiry is whether, based solely on
> medical evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him [or her] disabled
> without considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a claimant
> who is afflicted with a "listed" impairment is unable to perform
> substantial gainful activity.  Assuming the claimant does not have
> a listed impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, he [or she] has the residual
> functional capacity ("RFC") to perform his [or her] past work.
> Finally, if the claimant is unable to perform his [or her] past work,
> the [Commissioner] then determines whether there is other work
> which the claimant could perform.

Berry, 675 F.2d at 467.  The plaintiff bears the initial burden of proof to establish each of the

first four steps.  DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry,

675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the

Commissioner to prove that the plaintiff is still able to engage in gainful employment

somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

### C.  ALJ Greener's Findings

Plaintiff, represented by counsel, testified at the hearings held on February 27 and June 19, 2014.  T. 29-70.  Using the five-step sequential evaluation, ALJ Greener found that plaintiff (1) had not engaged in substantial gainful activity since May 15, 2012, the alleged onset date; (2) had the following severe medically-determinable impairments: degenerative disc disease in the cervical and lumbar spines, adjustment disorder, and post-traumatic stress disorder; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintained "the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b).  He can lift and carry 20 pounds occasionally, 10 pounds frequently, sit for 6 hours in an 8-hour workday and stand or walk for 6 hours in that workday if he can alternate sitting and standing, with sitting limited to 60 minutes at a time after which he can stand for 5 minutes or so.  During the position change, he does not have to leave the workstation.  The claimant can stand or walk for 60 minutes at a time, but then has to sit for 5 minutes or so before resuming standing and walking.  The work must be low stress, specifically meaning that it must concern routine daily tasks that do not significantly change in pace or location on a daily basis and do not ordinarily require confrontation with others, such as arguing with customers or detaining or restraining individuals"; and, thus (5) was capable of performing jobs existing in significant numbers in the national economy.  Id. at 15-23.

### D.  Plaintiff's Contentions

Plaintiff contends that the ALJ (1) erred in failing to assign any weight to plaintiff's Veterans Administration (VA) disability determination; (2) erred in failing to find that

plaintiff's degenerative disc disease did not meet or equal Listing 1.04(A); (3) erred in failing

to give good reasons for the rejection of the opinions of physical therapist Caryn Lindsay,

and pain management specialist Dr. Renee S. Melfi, M.D.; (4) erred in assessing plaintiff's

credibility in terms of his pain; and (5) erred in presenting the vocational expert with

hypothetical questions that did not fully take into account plaintiff's limitations. See Dkt. No.

11.


## 1. Listing 1.04(A)

As previously stated, at step three of the sequential disability evaluation process, the

ALJ must determine whether the claimant's conditions meet or equal the requirements for

any impairment listed in Part 404 of the Social Security Regulations, Subpart P, Appendix 1.

20 C.F.R. § 404.1520(a)(4)(iii). "The Listing of Impairments describes, for each of the major

body systems, impairments which are considered severe enough to prevent a person from

doing any gainful activity." 20 C.F.R. § 404.1525(a). If a claimant's impairment or

combination of impairments meets or equals a listed impairment, the evaluation process is

concluded and the claimant is considered disabled without considering the claimant's age,

education, or work experience. 20 C.F.R. § 404.1520(a)(4)(iii).

The burden is on the plaintiff to present medical findings which show that his or her

impairments match a listing or are equal in severity to a listed impairment. Zwick v. Apfel,

No. 97 Civ. 5140(JGK), 1998 WL 426800, at *6 (S.D.N.Y. July 27, 1998). In order to show

that an impairment matches a listing, the claimant must show that his or her impairment

meets all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20

C.F.R. § 404.1525(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify. Sullivan, 493 U.S. at 530.

To make a showing of medical equivalence to a listed impairment, the claimant must present medical findings equal in severity to all requirements, which are supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b). Any abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Furthermore, the medical reports should reflect physical limitations based upon actual observations and not just the claimant's subjective complaints. Id.

With regard to disorders of the spine, Listing 1.04(A) states that the disorder, resulting in compromise of a nerve root, including the cauda equina, or the spinal cord must be accompanied by:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).

Here, the ALJ summarily stated that, having reviewed the criteria for Listing 1.04(A), plaintiff's impairment did not meet or equal the listing. T. 17. Plaintiff argues that his degenerative disc disease meets or equals Listing 1.04(A). Dkt. No. 11 at 12. Defendant argues that substantial evidence supports the ALJ's determination that plaintiff's spine impairment does not meet or equal Listing 1.04(A). Dkt. No. 12 at 10.

Plaintiff injured his back at a firing range on May 12, 2012.  T. 55.  Following this incident, plaintiff was examined by a physician's assistant at Syracuse Orthopedic Associates.  Id. at 252-54.  At that time, plaintiff exhibited pain upon flexion and extension of the lumbar spine.  Id. at 253.  Sensation in his left foot was diminished for the entire foot.  Id. at 254.  Sensory exams on plaintiff's lower extremities were normal on June 18, 2012.  Id. at 250.  Plaintiff had an MRI on June 18, 2012 that showed a small left foraminal disc protrusion contributing to mild left exiting neural foraminal stenosis at L5-S1.  Id. at 339.  However, the MRI was "essentially unremarkable" otherwise.  Id.  Later examinations revealed that plaintiff exhibited a labored gait, radiating back pain, and tenderness across parts of his back.  See T. 291, 365, 372, 420, 422.  Straight leg raise tests performed on plaintiff were negative on June 18, 2012, but positive on August 24, 2012.  Id. at 250, 386.  On August 24, 2012, during a worker's compensation independent medical examination, Dr. Louis Benton, M.D. found that plaintiff suffered from degenerative disc disease, but found "no neurological findings."  Id. at 287.  In November 2012, a straight leg test and sensory exams performed on plaintiff were negative as to both lower extremities.  Id. at 273.  On May 6, 2013, Dr. Melfi observed tenderness in plaintiff's paravertebral areas, along with increased pain upon extension and flexion.  Id. at 365.  However, Dr. Melfi also noted that plaintiff's sensation was intact bilaterally in his lower extremities.  Id.  Plaintiff presented to Dr. Melfi on January 21, 2014 and complained of worsening pain in his back that radiated in to the bilateral buttocks and bilateral posterior lower extremities.  Id. at 422.  Dr. Melfi observed that sensation was intact to plaintiff's lower extremities, and a deep tendon reflex test was normal.  Id.

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's determination that plaintiff did not meet or equal Listing 1.04(A). Plaintiff's MRI results did not show evidence of nerve root compression as required under Listing 1.04(A). See T. 339. However, even if the MRI results did exhibit nerve root compression, the evidence does not show that plaintiff also suffered from the additional conditions under Listing 1.04(A). Although the medical evidence shows that plaintiff suffered from pain and tenderness upon palpation of the lumbar area and diminished range of motion, sensory exams and straight leg tests were largely normal. See T. 250, 365, 386, 422. Thus, substantial evidence supported the ALJ's determination that plaintiff's degenerative disc disease did not meet or equal Listing 1.04(A). See Pratt v. Astrue, No. 7:06-CV-551 LEK/DRH, 2008 WL 2594430, at *7 (N.D.N.Y. June 27, 2008) (finding that the plaintiff's lumbar spine condition did not meet Listing 1.04(A) where the plaintiff's sensory exams and straight leg tests were largely unremarkable and plaintiff's MRI did not exhibit nerve root compression).

Accordingly, the Commissioner's findings on this ground are affirmed.


## 2. RFC

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145,150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." Martone, 70 F. Supp. 2d at 150. RFC is

then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960 (2003). The Second Circuit has clarified that, in step five of the Commissioner's analysis, once RFC has been determined "the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's [RFC]." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

### a. Treating Physician Rule

Plaintiff argues that the ALJ erred in failing to provide good reasons for granting no weight to physical therapist Caryn Lindsay's asessment of plaintiff's impairments, and failing to grant controlling weight to the opinion of Dr. Melfi, in violation of the treating physician rule. Dkt. No. 11 at 13-19.

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. Under the regulations, a treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw, 221 F.3d at 134. "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D. Conn. 2009) (citations

omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. § 404.1527(e) (2005).

Plaintiff argues that the ALJ erred in summarily dismissing the opinion of Caryn Lindsay, a physical therapist. Dkt. No. 11 at 15. Lindsay completed a medical source statement on September 20, 2012. T. 313-17. Lindsay opined that plaintiff could occasionally lift up to ten pounds, and never more than that amount. Id. at 313. He could carry up to ten pounds frequently, between ten and twenty pounds occasionally, and never carry more than twenty pounds for any amount of time. Id. Lindsay further opined that plaintiff could sit for only ten minutes at a time without interruption, and for two hours total during an eight-hour workday. Id. at 314. He could stand for only ten minutes total without interruption, and for two hours total during an eight-hour workday. Id. He could walk for one hour without interruption, and for only two hours total during an eight-hour workday. Id.

Lindsay noted that plaintiff would need to lie down for the remaining six hours during an eight-hour workday. Id.

As to plaintiff's use of his hands, Lindsay opined that he could reach in all directions, and push or pull occasionally. T. 315. He could continuously perform handling, feeling, and fingering. Id. As to plaintiff's use of his feet, Lindsay opined that he could operate foot controls occasionally. Id.

As to postural activities, Lindsay opined that plaintiff could frequently climb stairs and ramps, but never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. T. 316. Lindsay attributed all of the limitations she outlined in the September 2012 medical source statement to plaintiff's increased pain, as well as his x-ray and MRI results. See id. at 313-16.

On November 27, 2012, Dr. Elke Lorensen, M.D. performed a consultative orthopedic examination of plaintiff. T. 362-64. Dr. Lorensen noted that plaintiff had "moderate restrictions, bending, lifting, and reaching." Id. at 364.

Lindsay and Dr. Melfi submitted a co-signed medical source statement, signed by Lindsay on January 30, 2014, and by Dr. Melfi on February 4, 2014. T. 425-27. Dr. Melfi opined that plaintiff could sit for twenty to thirty minutes at a time before needing to get up, but could never sit for more than two hours during an eight-hour workday. Id. at 425-26. Plaintiff could stand for no more than ten minutes before needing to sit down, and could stand for only about two hours during an eight-hour workday. Id. Dr. Melfi noted that plaintiff needed a job that permits him to shift from sitting, standing, or walking at will. Id.

Dr. Melfi assessed that plaintiff could lift ten pounds or less occasionally, but that he could never lift more than twenty pounds. T. 426. He could twist rarely, climb stairs

occasionally, and never crouch or squat, stoop or bend, or climb ladders.  Id.  He could

frequently use his hands to turn or twist objects, and perform fine manipulations with his

fingers, but he could only rarely use his arms to reach overhead.  Id.

Dr. Melfi opined that plaintiff would need to take a break approximately every thirty

minutes during the workday, and rest for thirty minutes before returning to work.  T. 427.

Dr. Melfi opined that plaintiff would be off task more than 20% of the time during an eight-

hour workday, and absent from work for more than four days per month.  Id.  Dr. Melfi

further stated that plaintiff experiences numbness and tingling in his lower extremities.  Id.

### i The ALJ's Assessment of Dr. Melfi's February 4, 2014 Opinion

The ALJ assigned "[l]ittle evidentiary weight" to Dr. Melfi's opinion and noted that Dr.

Melfi's assessment that plaintiff would need to sit and stand at will is not supported by the

record.  T. 21.  Later in the ALJ's decision, "some weight" was given to "various" of Dr.

Melfi's statements, and specifically her statement from December 10, 2012 that noted that

plaintiff could perform frequent sitting and standing, with opportunity to change position and

posture as needed for comfort, for 2.5-5.5 hours total during an eight-hour workday.  Id. at

374.  This statement from Dr. Melfi also noted that plaintiff could walk for up to two and a

half hours during an eight hour workday while carrying "duty gear."  Id.  Dr. Melfi also found

that plaintiff could carry twenty pounds of duty gear, but that thirty to thirty-five pounds

would be "excessive."  Id.  The ALJ did not identify which other statements of Dr. Melfi's that

he gave significant weight to.  Id. at 21.

The Court finds that the ALJ's reasoning for not crediting Dr. Melfi's February 4, 2014

medical opinion falls short of the criteria required by the treating physician rule.  The

February 4, 2014 opinion is the only opinion in the record from a treating physician regarding plaintiff's functional limitations. Instead of identifying the medical evidence in the record that would support less restrictive limitations than the ones imposed by Dr. Melfi, the ALJ fixated mostly on the bare notations of "partial mild to moderate disability" and "total disability" that Dr. Melfi made in various treatment notes, in addition to plaintiff's unwillingness to pay for a Functional Capacity Evaluation. T. 20. In addition, the ALJ contradicts herself where she states that she has given "some weight" to some of Dr. Melfi's opinions, but then states that the many statements in the record made by Dr. Melfi regarding plaintiff have been in the context of a worker's compensation claim, and have no value in the adjudication of plaintiff's Social Security benefits. Id. at 21. The ALJ's decision does not "meaningfully assess" Dr. Melfi's opinions in a manner sufficient to reject them. Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 431 (S.D.N.Y. 2010).

Contrary to the ALJ's conclusion, Dr. Melfi's opinion was supported by the medical evidence. In January 2012, plaintiff visited Dr. DiStefano complaining of constant pain in his lumbar area, radiating to both posterior thighs and legs. T. 256. Dr. DiStefano noted that plaintiff was in mild discomfort, with pain upon extension, and tenderness upon palpation in the lumbar area. Id. at 256-57. Plaintiff was referred to Dr. Melfi for a pain consultation. Id. Following his injury at work, on May 18, 2012, plaintiff visited Dr. DiStefano again and exhibited pain upon extension, along with diminished sensation in his left foot. Id. at 253-54. His symptoms improved slightly in June 2012. Id. at 250.

Plaintiff received a right L4-5, L5-S1 intra-articular facet injection from Dr. Melfi on May 17, 2012. T. 341. Plaintiff's pain improved after the injection. Id. At a June 27, 2012 follow-up visit, plaintiff reported increased pain, and exhibited increased pain with extension

of the spine. Id. at 342. Dr. Melfi noted plaintiff's "satisfactory" responses to facet blocks, and authorized plaintiff to begin radiofrequency treatment. Id. Plaintiff received radiofrequency treatment on July 6 and July 16, 2012. Id. at 345-46.

On September 19, 2012, plaintiff reported "80% relief" of back pain, but reported "electrical sensation" in his back and right buttock occasionally, along with constant low back pain. T. 350. Dr. Melfi noted that plaintiff had responded well to radiofrequency treatment, but still experienced intermittent radicular symptoms, and therefore opined that he was under a mild to moderate disability. Id. On October 17, 2012, plaintiff reported worsening back pain, and Dr. Melfi noted that a September 26, 2012 MRI showed mild degenerative disc disease at C3 through C7 along with a mild disc bulge at C3-4, C4-5, C5-6. Id. at 353. Dr. Melfi again opined that plaintiff had a partial mild to moderate disability. Id.

On January 7, 2013, plaintiff reported worsening pain to Dr. Melfi. T. 370. He described the pain as an eight out of ten, and stated that the pain was "stabbing, burning, achy, deep, dull radiating down both legs all the way down to the feet." Id. at 372. The pain was exacerbated when he picked up an eight-pack of soda. Id. Dr. Melfi noted tenderness on L4 through S1 bilaterally, left-sided. Id. A slump test was positive on the left, and a Hoffman's sign was positive bilaterally. Id. Dr. Melfi noted an "exacerbation of [plaintiff's] left radicular symptoms." Id. On January 10, 2013, Dr. Melfi indicated that she did not feel that plaintiff could lift up to twenty pounds as she had previously indicated in December 2012. Id. at 370.

On March 14, 2013, Dr. Melfi noted that plaintiff had 80% relief of his radicular symptoms after injections, but continued to have pain across his lower back. T. 367.

Plaintiff described the pain as "constant, sharp, burning, stabbing, shooting, achy, [and] deep with associated numbness and tingling, intermittent electrical sensation[.]" Id. Plaintiff told Dr. Melfi on this date that he did not participate in an updated functional capacity exam because he did not want to pay for the exam. Id. Plaintiff further reported that he was planning on exploring his surgical options with Dr. DiStefano. Id.

On May 6, 2013, plaintiff was seen by Dr. Melfi, who noted that plaintiff still experienced "significant back pain" although his radicular symptoms continued to be reduced by the injections he received. T. 365. He also continued to experience muscle spasms. Id. Given plaintiff's satisfactory response to facet blocks, Dr. Melfi recommended that he have another round of radiofrequency treatment. Id.

On October 11, 2013, plaintiff reported constant back pain. T. 424. He also stated that he was not interested in surgery. Id. Dr. Melfi reviewed a functional capacity exam[2] and noted that the functional capacity exam indicated that plaintiff could perform sedentary work, "but there is notation regarding self-limiting behaviors, general deconditioning and lack of endurance." Id. On January 21, 2014, plaintiff reported that his symptoms were worsening, and that the pain extended to his bilateral buttocks and bilateral posterior lower extremities. Id. at 422. He felt like he needed injections again. Id. Dr. Melfi noted that plaintiff presented with "stenosis and/or radicular pain." Id. She scheduled plaintiff for more injections, but noted that future injections would be canceled if he did not feel relief. Id.

---

[2] The ALJ focuses greatly on Dr. Melfi's notations regarding whether plaintiff received an updated functional capacity exam. See T. 20. The Court notes that it is not apparent from Dr. Melfi's medical records which functional capacity exam she is referring to in these notations, and the Court will not endeavor to assume which functional capacity exam Dr. Melfi is referring to, or whether the results are present in the record.

Despite Dr. Melfi's numerous medical records indicating plaintiff's worsening condition, the ALJ focused on one statement that Dr. Melfi made in December 2012 regarding plaintiff's work abilities. T. 21. Further, instead of discussing medical evidence in the record, the ALJ was inexplicably focused on whether or not plaintiff received a separate functional capacity examination, and whether or not that functional capacity examination was in the record. Id. The ALJ found that Dr. Melfi's opinion was not supported by the medical records, despite plaintiff's MRI results that show degenerative disc disease, and his frequent complaints of intense back pain, and radicular symptoms. T. 353, 365, 422, 424. Although the ALJ found support for her RFC assessment in Dr. Melfi's statement that plaintiff could lift twenty pounds, and sit or stand for 2.5 to 5.5. hours during an eight-hour workday, the ALJ did not address the records indicating that plaintiff's condition was worsening and becoming increasingly more painful from December 2012 to January 2014. See T. 21, 374, 422. As such, the ALJ was under a duty to investigate the possible deterioration of plaintiff's condition. See Balodis v. Leavitt, 704 F. Supp. 2d 255, 267 (E.D.N.Y. 2010) (finding error where the ALJ failed to analyze "whether plaintiff's condition deteriorated in the substantial time period between doctors' opinions[.]").

Furthermore, the Court finds that the ALJ did not sufficiently state the reasons for affording little evidentiary weight to Dr. Melfi's assessment. The Second Circuit has stated that it does "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 32. Here, the ALJ found that Dr. Melfi's opinion as to plaintiff's need to sit and stand at will was

not supported by the record.  T. 21.  The ALJ also found that Dr. Melfi's limitation on plaintiff's turning of the head was not supported by the record because cervical findings were minimal.  Id.  In addition, the ALJ found that Dr. Melfi's opinion that plaintiff would be absent from work for four days per month was speculative, and that it could not be known whether the assessed limitations were based on plaintiff's own reporting of his symptoms.  Id.  Given the medical evidence of records regarding plaintiff's lumbar spine pain, and the ALJ's perceived gap in the record as to what Dr. Melfi based her opinion on, the ALJ should have sought out clarifying information from Dr. Melfi.  Snyder v. Colvin, No. 13-CV-6644T, 2015 WL 3407956, at *5 (W.D.N.Y. May 27, 2015) (finding that an ALJ is obligated to seek out further information where there are contradictions or inconsistencies, or obvious gaps in the administrative record) (citing Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)).  Thus, the Court finds that the ALJ failed to set forth good reasons for assigning less than controlling weight to Dr. Melfi's opinion.

Accordingly, this matter is remanded, and the ALJ is directed seek out clarifying information as to perceived gaps in the administrative record.  On remand, the ALJ should set forth good reasons for the weight given to Dr. Melfi's opinion.

**ii. The ALJ's Assessment of Caryn Lindsay, P.T.'s September 20, 2012 Opinion**

The ALJ did "not assign[] any weight" to Lindsay's assessment.  T. 19.  The ALJ stated that Lindsay, a physical therapist, was not a recognized medical source.  Id.  The ALJ also noted that Lindsay's opinion was not supported by the medical evidence.  Id.

The Social Security regulations state that evidence from sources other than "acceptable medical sources" may be used as evidence "to show the severity of [the

claimant's] impairment(s) and how it affects [his or her] ability to work." 20 C.F.R. §

416.913(d). Because Lindsay is not an "acceptable medical source" under the regulations,

the ALJ was not required to afford the same deference to Lindsay's opinion as she would a

treating physician. Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008).

Upon remand, if determined to be necessary, the ALJ will reassess Lindsay's opinion

in light of the evidence as a whole.


### iii.  The ALJ's Assessment of the Disability Determination of the Department of Veterans Affairs ("VA")

Plaintiff argues that the ALJ erred by not assigning any weight to plaintiff's VA

disability rating. Dkt. No. 11 at 11-12. Defendant argues that the ALJ considered and

properly assigned no weight to the VA disability determination. Dkt. No. 12 at 8-9. As

defendant concedes that "the adjudicator should explain the consideration given to these

decisions in the notice of decision for hearing cases and in the case record for initial and

reconsideration cases[,]" the Court directs the ALJ to assess the VA disability determination

in light of the evidence as a whole upon remand.


### 3.  Remaining Contentions

Plaintiff contends that the ALJ erred in assessing his credibility, and in finding that

defendant met her burden at step five of the sequential evaluation. Dkt. No. 11 at 19-24.

Because plaintiff's remaining contentions may be impacted by the subsequent proceedings

directed by this Order, the undersigned declines to consider them at this juncture.

### III. Conclusion

Having reviewed the administrative transcript and the ALJ's findings, the Court concludes that the ALJ's determination is not supported by substantial evidence. Remand for further administrative action consistent with this Memorandum-Decision and Order is needed. Accordingly, it is hereby

**ORDERED** that plaintiff's motion for judgment on the pleadings is **GRANTED** (Dkt. No. 11). The matter is remanded to the Commissioner for additional proceedings consistent with the above, pursuant to sentence four of 42 U.S.C. 405(g); and it is further

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of the Memorandum Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated:　　　March 27, 2017
　　　　　　Albany, New York


_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge